David Krieger, Esq.  Nevada Bar #ttipt9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, #130
Henderson, NV 89123
Telephone: (708)880-5554
dkrieger@hainesandkrieger.com
*Co-Counsel for Plaintiff Sakorn Sumedhatip*

Marc E. Dann, Esq. Ohio Bar #0039425
THE DANN LAW FIRM CO., L.P.A.
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216)373-0539
Facsimile: (216)-373-0536
notices@dannlaw.com
*Pro hac vice* (Application Pending)
*Co-Counsel for Plaintiff Sakorn Sumedhatip*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

**SAKORN SUMEDHATIP**
1700 British Cup Drive
Las Vegas, NV 89117

      v.

**BAYVIEW LOAN SERVICING, LLC**
c/o CSC Services of Nevada, Inc.
2215 Renaissance Drive, Suite B
Las Vegas, NV 89119-6727

---

## COMPLAINT FOR DAMAGES
## WITH JURY DEMAND

Now comes Plaintiff Sakorn Sumedhatip, by and through counsel, and hereby

state as follows for their Complaint against Defendant Bayview Loan Servicing, LLC:

1.      Plaintiff Sakorn Sumedhatip ("Plaintiff" or "Sumedhatip") is the owner of real property located at and commonly known as 1700 British Cup Drive, Las Vegas, NV 89117.

2.      Plaintiff, at all times relevant, has maintained and currently maintain the Property as their primary, principal residence.

3.      The Plaintiff at all times herein was an adult individual residing in Las Vegas, Nevada, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3).

4.      Defendant Bayview Loan Servicing LLC ("Defendant" or "Bayview") is the current servicer of a note (the "Note") and a deed of trust on the Property that allegedly secures the Note (the "DOT") (collectively referred to hereinafter as the "Loan").

5.      Bayview is and at all times herein was acting as a default mortgage servicer for the Loan and was at all relevant times herein a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6), since it acquired servicing rights on the Loan after the loan was in default.

6.      Bayview is doing business in the State of Nevada as a business entity operating as a collection agency, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

7.      Bayview has been the servicer of the Loan since at least November 9, 2012.

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act

(DFA), the Truth in Lending Act (TILA), 15 U.S.C. §§ 1601, *et seq.*, and the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §§ 2601, *et seq.*

9. This action is specifically filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35, *et seq.*, of Regulation X.

10. This action also arises out of defendant's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA").

11. This Court has supplemental jurisdiction to hear any and all state law claims pursuant to 28 U.S.C. §1367.

<u>INTRODUCTION</u>

12. Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

13. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

14. Specifically, on January 17, 2013, the CFPB issued the RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 F.R. 10901 (February 14, 2013) and 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

15. The Loan in the instant matter is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

16.    Bayview is subject to the aforesaid Regulations and does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. §1026.41(e)(4), nor does Bayview qualify for the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

17.    Plaintiff is asserting claims for relief against Bayview for breaches of specific rules under Regulation X and Regulation Z, as set forth, *infra*.

18.    Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

## BACKGROUND

19.    Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

20.    Plaintiff obtained the Loan in or about April 6, 2006, in the initial amount of $228,000.00.

21.    On or about May 12, 2009, Plaintiff filed for protection under Chapter 13 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Nevada, Case No. 09-17589 (the "Bankruptcy").

22.    On or about July 13, 2009, non-party CitiMortgage, Inc. ("Citi'), the predecessor servicer for the Loan, filed a proof of claim in the Bankruptcy claiming Plaintiff owed pre-Bankruptcy arrears on the Loan and was in default in the amount of $4,481.21 (the "POC"). A copy of the POC is attached as *Exhibit 1.*

4

23.     On or about August 26, 2009, Plaintiff's Chapter 13 Bankruptcy Plan (the "Plan") was confirmed whereby the POC would be lawfully repaid through the Plan. A copy of the *Order Confirming the Debtor(s) Plan #2 and Awarding Fees to the Debtor(s) Attorney* (the "Confirmation" is attached as *Exhibit 2*.

24.     Pursuant to the Plan, Plaintiff was required to resume making periodic payments under the terms of the Loan directly to CitiMortgage with Plaintiff's first direct post-Bankruptcy mortgage payment to commence on June 1, 2009. See *Exhibit 2*.

25.     On or about November 9, 2012, Bayview filed a *Notice of Assignment/Transfer of Claim* in the Bankruptcy which indicated that Bayview acquired servicing rights to the Loan from Citi and that that all future payments on the Loan should be issued to Bayview. A copy of such notice is attached as *Exhibit 3*.

26.     On or about February 11, 2013, Bayview filed a *Motion for Relief from Automatic Stay re Property Located at 1700 British Cup Dr., Las Vegas, NV 89117* (the "MFR") seeking permission to foreclose on the Property. A copy of the MFR is attached as *Exhibit 4*.

27.     Specifically, Bayview, by and through the MFR, claimed that Plaintiff was delinquent with post-petition payments in the amount of $3,531.45, inclusive of four (4) alleged missed payments for November 2012 through February 2013, along with various fees and costs Bayview claimed it incurred.  See *Exhibit 4*.

28.     The MFR was unopposed and, on March 16, 2013, the Court issued an Order granting the relief sought by and through the MFR. A copy of such Order is attached as *Exhibit 5*.

29.     Contrary to the statements and allegations contained in the MFR, Plaintiff had, in fact, made any and all post-petition payments as required and was current with the Loan at the time Bayview filed the MFR.

30.     On or about December 22, 2014, Plaintiff received a discharge in the Bankruptcy. A copy of such discharge is attached as *Exhibit 6*.

31.     Further, as evidenced by the *Chapter 13 Final Account and Report – Completed (BAPCPA)* (the "FAR"), the Chapter 13 Trustee for the Bankruptcy (the "Trustee") disbursed $4,481.21 to Bayview thereby curing any and all pre-Bankruptcy arrears claimed by Citi and/or Bayview. A copy of the FAR is attached as *Exhibit 7*.

32.     At no point in time during or after the Bankruptcy has Bayview returned any of the disbursements that the Trustee issued to Bayview in relation to the Loan.

33.     On or about November 23, 2015, Plaintiff, by and through Attorney David Krieger of Haines & Krieger, LLC, sent correspondence to Bayview captioned or otherwise titled "Request for Information Pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2)" (the "RFI") via Certified Mail [Receipt No. 9407 1102 0088 2809 6773 26]. A copy of the RFI is attached as *Exhibit 8*.

34.     Bayview received the RFI on or about December 3, 2015. A copy of the USPS Tracking information for the RFI, obtained from the website for the United States Postal Service (USPS) (www.usps.com), accessed on February 6, 2016, is attached as *Exhibit 9.*

35.     On or about December 11, 2015, Bayview sent correspondence to Plaintiff, by and through Attorney Krieger, acknowledging receipt of the RFI (the "RFI Acknowledgment"). A copy of the RFI Acknowledgment is attached as *Exhibit 10.*

36.     As of February 7, 2016, neither Plaintiff nor Attorney Krieger had received any correspondence responding to the RFI other than the RFI Acknowledgment.

37.     On or about February 7, 2016, Plaintiff, by and through Attorney Krieger, sent correspondence to Bayview captioned or otherwise titled "Notice of Error pursuant to 12 C.FR. § 1024.35" ("NOE #1") via Certified Mail [Receipt No. 9402 6102 0088 1908 3409 33]. A copy of NOE #1 is attached as *Exhibit 11.*

38.     Bayview received NOE #1 on or about February 11, 2016. A copy of the USPS Tracking information for the RFI, obtained from the USPS's website (www.usps.com), accessed on April 19, 2016, is attached as *Exhibit 12.*

39.     On or about February 16, 2016, Bayview sent correspondence to Plaintiff, by and through Attorney Krieger, acknowledging receipt of NOE #1 (the "Acknowledgment of NOE #1"). A copy of the Acknowledgment of NOE #1 is attached as *Exhibit 13.*

40.     On or about March 3, 2016, Bayview sent correspondence to Plaintiff, by and through Attorney Krieger, purportedly in response to NOE #1 (the "Response to NOE #1"). A copy of the Response to NOE #1 is attached as *Exhibit 14*.

41.     On or about March 19, 2016, at Plaintiff's request, Experian prepared a Credit Report for Plaintiff (the "Report"). A copy of the Report is attached as *Exhibit 15*.

42.     The Report indicates that there is "Potentially Negative" information regarding the Loan reported against the Plaintiff's credit as of March 19, 2016. See *Exhibit 15*.

43.     Specifically, the Report evidences that Equifax shows that the Loan is past due in the amount of $3,509.00. See *Exhibit 15*.

44.     Moreover, the Report evidences that in regards to the payment history on the Loan, Equifax shows that the loan is "120 Days Late" for the months of March 2014 through July 2014 and for the months of September 2014 through February 2016, for a total of twenty-three (23) months. See *Exhibit 15*.

45.     The Report also evidences that in regards to the payment history on the Loan, Equifax shows that the loan is "90 Days Late" for August 2014, for a total of one (1) month. See *Exhibit 15*.

46.     The Report evidences that Transunion also shows that the Loan is past due in the amount of $3,509.00. See *Exhibit 15*.

47.     Moreover, the Report evidences that in regards to the payment history on the Loan, Transunion shows that the loan is "120 Days Late" for the months of

8

March 2014 through July 2014 and for the months of September 2014 through February 2016, with no data being reported for the month of December 2015, for a total of twenty-two (22) months. See *Exhibit 15*.

48.     The Report also evidences that in regards to the payment history on the Loan, TransUnion shows that the loan is "90 Days Late" for August 2014, for a total of one (1) month.

49.     On or about March 31, 2015, Plaintiff, by and through Attorney Krieger, sent correspondence to Bayview captioned or otherwise titled "Notice of Error under 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. § 1024.35(e); Notice of Errors under 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. § 1024.35(e); and, Notice of Errors under 12 C.F.R. § 1024.35(b)(11) for violation of 12 C.F.R. § 1024.35(i)(1)" ("NOE #2") via Certified Mail [Receipt No. 9407 1102 0079 3947 0759 84]. A copy of NOE #2 is attached as *Exhibit 16*.

50.     Bayview received NOE #2 on or about April 4, 2016. A copy of the USPS Tracking information for the RFI, obtained from the USPS's website (www.usps.com), accessed on April 19, 2016, is attached as *Exhibit 17*.

51.     Despite Plaintiff's contentions to Bayview that Plaintiff has, in fact, made any and all payments as required pursuant to the terms of the Loan, Bayview has repeatedly sent various correspondence stating that the Loan is in default and that Bayview intends to accelerate the balance owing on the Loan.

52.     On or about January 23, 2016, Bayview sent correspondence to Plaintiff captioned or otherwise titled "Notice of Default and Intent to Accelerate".  A copy of such correspondence is attached as *Exhibit 18*.

53.     On or about March 29, 2016, Bayview sent another piece of correspondence to Plaintiff captioned or otherwise titled "Notice of Default and Intent to Accelerate".  A copy of such correspondence is attached as *Exhibit 19*.

54.     The correspondence captioned or otherwise titled "Notice of Default and Intent to Accelerate" (the "Default Notices") state:

> **We have the ability to foreclose** because of the following: You signed and executed a promissory note secured by a mortgage or deed of trust ("the security instrument") in which you agreed to repay your debt at agreed upon terms. Because you have not fulfilled the terms of this agreement, **Servicer, on behalf of the Noteholder intends to initiate foreclosure action on the mortgage property** [emphasis added].

*See Exhibits 18 and 19.*

55.     Bayview has acted improperly in regards to its servicing of the Loan, or in its dealings with the Loan otherwise, by engaging in the following acts (which will be described in further detail, *infra*): Failing to properly account for all payments Plaintiff made in satisfaction of their obligations on the Loan; improperly alleging that Plaintiff is in default of obligations on the Loan; failing to supply requested information in a timely manner that would enable Plaintiff to discover the root cause of the problems with the servicing of the Loan; failing to properly respond to or otherwise correct errors in the servicing of the Loan of which Plaintiff has put

Bayview on notice; and, improperly furnishing adverse information to consumer reporting agencies regarding payments that are the subject of such noticed errors.

56. Bayview's improper actions have caused Plaintiff to incur a number of improper, wrongful, or otherwise unwarranted fees on the Loan including, but not limited to numerous late fees, corporate advances, and miscellaneous charges.

57. Plaintiff at all times relevant, has merely wanted to pay their monthly mortgage payment in fulfillment of their obligations and to continue to rehabilitate their credit following the Bankruptcy.

58. All attempts and requests Plaintiff has made to Bayview to have their mortgage servicing corrected have fallen on deaf ears and any response Bayview has supplied has been dismissive, vague, or otherwise unhelpful.

59. Rather than properly responding to attempts and requests Plaintiff has made to Bayview to have their mortgage servicing corrected, Bayview has responded with threats of foreclosure by and through the Default Notices.

60. Bayview's improper actions have caused Plaintiff significant, continued, and wholly unwarranted harm to their credit.

61. Moreover, Bayview's improper actions have caused Plaintiff to incur costs, fees, and lost time in attempting to correct the errors and mistakes on the Loan account.

62. Bayview's wrongful and willful actions have caused Plaintiff to suffer emotional distress driven by the fear that they might lose and be forced from their family home, even though Plaintiff has made numerous contentions that Bayview is

wrongfully alleging Plaintiff to be in default, which has resulted in anxiety, depression, embarrassment, fear, frustration, anger, loss of sleep, loss of appetite, chest pains, headaches, feelings of helplessness and intimidation, illness, medical expenses, rage and other emotional distress as well as out of pocket expenses to, among other things, paying for additional credit reports to confirm Bayview's corrections.

63.     As of the time of the filing of this Complaint, Bayview has had more than 500 consumer complaints lodged against it nationally, specifically concerning the issue identified as "[l]oan servicing, payments, escrow account". Each such complaint is filed and cataloged in the CFPB's publicly accessible online database which can be located and accessed at the following hyperlink: http://www.consumerfinance.gov/complaintdatabase/.

## COUNT ONE: VIOLATION OF 12 C.F.R. § 1024.36(c)

### (Failure to send written acknowledgment of a servicer's receipt of a request for information issued pursuant to 12 C.F.R. § 1024.36)

64.     Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

65.     12 C.F.R. §1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

12

66.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. §1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

67.     12 C.F.R. § 1024.36(c) provides that "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving an information request from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the information request."

68.     Plaintiff, by and through Attorney Krieger, sent the RFI to Bayview on or about November 23, 2015. See *Exhibit 8.*

69.     The RFI constituted a request for information pursuant to 12 C.F.R. § 1024.36

70.     Bayview received the RFI on or about December 3, 2015, See *Exhibit 9.*

71.     Pursuant to 12 C.F.R. §1024.36(c), Bayview was required to provide a written response to Plaintiff acknowledging their receipt of the RFI on or before December 10, 2015.

72.     Bayview, however, did not send any such correspondence to Plaintiff acknowledging Bayview's receipt of the RFI until December 11, 2015. See *Exhibit 10.*

73.     Bayview's actions, in failing to provide a written response to Plaintiff acknowledging receipt of the RFI on or before December 10, 2015, constitute a willful violation of 12 C.F.R. §1024.36(c).

74.     Bayview's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

75.     As a result of Bayview's actions, Bayview is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO: VIOLATION OF 12 C.F.R. § 1024.36(d)

### (Failure to respond in a timely manner to a request for information issued pursuant to 12 C.F.R. § 1024.36)

76.     Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

77.     12 C.F.R. §1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

78.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. §1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

79.     12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

> [A] servicer must respond to an information request by either:
>
> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's

> determination, and provides contact information,
> including a telephone number, for further assistance

80.   Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

> A servicer must comply with the requirements of
> paragraph (d)(1) of this section:
> (A) Not later than 10 days (excluding legal public holidays,
> Saturdays, and Sundays) after the servicer receives an
> information request for the identity of, and address or
> other relevant contact information for, the owner or
> assignee of a mortgage loan; and
> (B) For all other requests for information, not later than 30
> days (excluding legal public holidays, Saturdays, and
> Sundays) after the servicer receives the information
> request.

81.   12 C.F.R. §1024.36(d)(2)(i) provides that "[a] servicer may not extend the time period for requests for information governed by paragraph (d)(2)(i)(A) of this section.

82.   Plaintiff, by and through Attorney Krieger, sent the RFI to Bayview on or about November 23, 2015. See *Exhibit 8.*

83.   The RFI, in part, constituted a request for information pursuant to 12 C.F.R. §1024.36(d)(2)(i)(A) as the RFI requested information as to "[t]he identity of and address for the current owner of the above-referenced mortgage loan". See *Exhibit 8.*

84.   Bayview received the RFI on or about December 3, 2015, See *Exhibit 9.*

85.   Pursuant to 12 C.F.R. §1024.36(d)(2)(i)(A), Bayview was required to provide written correspondence to Plaintiff in response to Plaintiff's request for "[t]he identity of and address for the current owner of the above-referenced mortgage loan",

as contained in the RFI, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1), on or before December 17, 2015.

86. Neither Plaintiff nor Attorney Krieger received any written correspondence from Bayview responding to any part of the RFI in compliance with the requirements of 12 C.F.R. §1024.36(d)(1) on or around December 17, 2015.

87. Bayview did not provide any written correspondence to Plaintiff in response to Plaintiff's request for "[t]he identity of and address for the current owner of the above-referenced mortgage loan", as contained in the RFI, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1), on or before December 17, 2015.

88. Bayview did not provide any written correspondence to Plaintiff in response to Plaintiff's request for "[t]he identity of and address for the current owner of the above-referenced mortgage loan", as contained in the RFI, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1), until Bayview sent the Response to NOE #1 on or about March 3, 2016, roughly ninety (90) days after Bayview's receipt of the RFI. See *Exhibit 14*.

89. Bayview's actions, in failing to provide a written correspondence to Plaintiff in response to Plaintiff's request for "[t]he identity of and address for the current owner of the above-referenced mortgage loan", as contained in the RFI. on or before December 17, 2015, constitute a willful violation of 12 C.F.R. §1024.36(c).

90. Bayview's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

91.     As a result of Bayview's actions, Bayview is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE: VIOLATION OF 12 C.F.R. § 1024.36(d)

**(Failure to respond in a timely manner to a request for information issued pursuant to 12 C.F.R. § 1024.36)**

92.     Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

93.     12 C.F.R. §1024.36(a) provides, in relevant part, that a request for information may consist of "any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

94.     Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. §1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

95.     12 C.F.R. § 1024.36(d)(1) provides, in relevant part, that:

> [A] servicer must respond to an information request by either:
> (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or
> (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's

determination, and provides contact information, including a telephone number, for further assistance

96.     Furthermore, 12 C.F.R. § 1024.36(d)(2)(i) provides that:

A servicer must comply with the requirements of paragraph (d)(1) of this section:

(A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and

(B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request.

97.     Plaintiff, by and through Attorney Krieger, sent the RFI to Bayview on or about November 23, 2015. See *Exhibit 8.*

98.     The RFI, in part, constituted a request for information pursuant to 12 C.F.R. §1024.36(d)(2)(i)(B) as the RFI requested information other than "the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan". See *Exhibit 8.*

99.     Bayview received the RFI on or about December 3, 2015, See *Exhibit 9.*

100.    Pursuant to 12 C.F.R. §1024.36(d)(2)(i)(A), Bayview was required to provide written correspondence to Plaintiff in response to the RFI as to all requests other than that for  "[t]he identity of and address for the current owner of the above-referenced mortgage loan", as contained in the RFI,  in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1), on or before January 19, 2015.

101.    Neither Plaintiff nor Attorney Krieger received any written correspondence from Bayview responding to any part of the RFI in compliance with the requirements of 12 C.F.R. §1024.36(d)(1) on or around January 19, 2015.

102.    Bayview did not provide any written correspondence to Plaintiff in the RFI as to all requests other than that for "[t]he identity of and address for the current owner of the above-referenced mortgage loan", as contained in the RFI, in compliance with the requirements of 12 C.F.R. § 1024.36(d)(1), on or before January 19, 2015.

103.    Further, it should be noted that, although Bayview stated that a life of loan mortgage transaction history for the Loan, as requested by and through the RFI, NOE #1, and NOE #2, was enclosed with the Response to NOE #1, no such information was enclosed.  See *Exhibits 8*, *11*, and *14*, respectively.

104.    Further, as stated in NOE #1, the continued failure and refusal of Bayview to provide "[a]n exact reproduction of the life of loan mortgage transactional history for this loan on the system of record used by the servicer" has wholly hindered Plaintiff from performing a full review of the transaction history for the loan which has greatly hindered Plaintiff from ascertaining the source of the problems in the errors Bayview has committed in the servicing of the Loan and has therefore contributed significantly to the continued harm Plaintiff has been caused to suffer.

105.    Bayview's actions, in failing to provide a written correspondence to Plaintiff in response to all requests other than that for Plaintiff's request for "[t]he identity of and address for the current owner of the above-referenced mortgage loan",

as contained in the RFI, on or before December 17, 2015, constitute a willful violation of 12 C.F.R. §1024.36(c).

106.    Bayview's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

107.    As a result of Bayview's actions, Bayview is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

### COUNT FOUR: VIOLATION OF 12 C.F.R. § 1024.35(e)

**(Failure to properly respond to a notice of error issued pursuant to 12 C.F.R. §1024.35)**

108.    Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

109.    12 C.F.R. § 1024.35(a) provides, in relevant part, that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

110.    12 C.F.R. 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or
> (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a

statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

111.   Further, 12 C.F.R. § 1024.35(e)(3)(i) provides, in relevant part:

A servicer must comply with the requirements of paragraph (e)(1) of this section:

(A) Not later than seven days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error for errors asserted under paragraph (b)(6) of this section.

(B) Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section.

(C) For all other asserted errors, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the applicable notice of error.

112.   Plaintiff, by and through Attorney Krieger, sent NOE #1 to Bayview on or about February 7, 2016.  See *Exhibit 11.*

113.   NOE #1 constituted a notice of error as such term is defined in 12 C.F.R. § 1024.35(a). See *Exhibit 11.*

114.   Bayview received NOE #1 on or about February 11, 2016. See *Exhibit 12.*

115.   On or about February 16, 2016, Bayview sent the Acknowledgment of NOE #1 to Plaintiff, by and through Attorney Krieger.  See *Exhibit 13.*

116.   On or about March 3, 2016, Bayview sent the Response to NOE #1 to Plaintiff, by and through Attorney Krieger.  See *Exhibit 14*.

117.   To date, neither Plaintiff nor Attorney Krieger have received any correspondence from Bayview related to NOE #1 other than the Acknowledgment of NOE #1 and the Response to NOE #1.

118.   To date, Bayview has not sent any correspondence to Plaintiff or Attorney Krieger related to NOE #1 other than the Acknowledgment of NOE #1 and the Response to NOE #1.

119.   The Acknowledgment of NOE #1 contained no substantive response to NOE #1 whatsoever; it merely indicated that Bayview received NOE #1 and that a further response would be forthcoming from Bayview.  See *Exhibit 13*.

120.   The Response to NOE #1 did not indicate that any of the errors asserted by and through NOE #1 had been corrected nor did the Response to NOE #1 indicate the effective date of any such corrections, as none were indicated, which would have rendered the Response to NOE #1 to be compliant with 12 C.F.R. 1024.35(e)(1)(i)(A). See *Exhibit 14*.

121.   Further, at no point in time did the Response to NOE #1 indicate that no error(s) had occurred with an explanation as to the reason(s) for such determination(s), which would have rendered the Response to NOE #1 to be compliant with 12 C.F.R. 1024.35(e)(1)(i)(B).  See *Exhibit 14*.

122.    The Response to NOE #1 failed to meet the express, explicit requirements of either 12 C.F.R. 1024.35(e)(1)(i)(A) or 12 C.F.R. 1024.35(e)(1)(i)(B). See *Exhibit 14*.

123.    Bayview's actions, in failing to provide a response to the NOE that meets the explicit and express requirements of 12 C.F.R. § 1024.35(e), constitute a willful violation of 12 C.F.R. § 1024.35(e).

124.    Bayview's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

125.    As a result of Bayview's actions, Bayview is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNTS FIVE THROUGH TWENTY-NINE: VIOLATIONS OF 12 C.F.R. § 1024.35(i)(1)

**(Improperly furnishing adverse credit information to a consumer reporting agency regarding payments that are the subject of a notice of error)**

126.    Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

127.    12 C.F.R. § 1024.35(a) provides, in relevant part, that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

128.   12 C.F.R. § 1024.35(i)(1) explicitly provides that "[a]fter receipt of a notice of error, a servicer may not, for 60 days, furnish adverse information to any consumer reporting agency regarding any payment that is the subject of the notice of error."

129.   Plaintiff, by and through Attorney Krieger, sent NOE #1 to Bayview on or about February 7, 2016.  See *Exhibit 11*.

130.   NOE #1 constituted a notice of error as such term is defined in 12 C.F.R. § 1024.35(a). See *Exhibit 11*.

131.   Plaintiff explicitly alleged numerous errors in Bayview's servicing of the Loan by and through the NOE. See *Exhibit 11*.

132.   Plaintiff alleged the following by and through the NOE that :

> Bayview systematically misapplied funds to the Borrower's mortgage account[.]
> […]
> As of the date of this notice, the Borrower was required to make a total of eighty-one (81) payments from June 1, 2009 through February 1, 2016.  The Borrower believes all required payments were in fact made, which prompted the initial RFI.
> […]
> [T]he Borrower believes that all payments due to Bayview have been made, so Bayview is in error by claiming that the Borrower is past due for "09/01/15 [through] 01/01/16".  The Borrower also disputes the "Corporate Advance Balance" is $1,601.31 as stated in the NOD. Further, $1,100 is not a "good faith estimate" of the actual fees Bayview may charge for a hypothetical trustee sale of the property (which is unlawful in any event based on the foregoing).  Accordingly, the NOD contains numerous errors and was sent in error.

See *Exhibit 11*.

133.   Furthermore, Plaintiff explicitly stated that "[t]he Borrower is hereby placing Bayview on notice that the following payments are subject to this notice of

24

error…each and every payment due under the mortgage loan herein from **May 12, 2009 through February 7, 2016**." See *Exhibit 11* (emphasis in original).

134.    Also, at least twice within NOE #1, Plaintiff explicitly informed Bayview of the express prohibitions on reporting adverse information to credit reporting agencies contained in 12 C.F.R. § 1024.35(i)(1). See *Exhibit 11*.

135.    Bayview received NOE #1 on or about February 11, 2016. See *Exhibit 12*.

136.    On or about February 16, 2016, Bayview sent the Acknowledgment of NOE #1 to Plaintiff, by and through Attorney Krieger.  See *Exhibit 13*.

137.    Experian sent the Report to Plaintiff on or about March 19, 2016. See *Exhibit 15*.

138.    The Report indicates that there is "Potentially Negative" information regarding the Loan reported against the Plaintiff's credit as of March 19, 2016. See *Exhibit 15*.

139.    Specifically, the Report evidences that Equifax shows that the Loan is past due in the amount of $3,509.00. See *Exhibit 15*.

140.    Moreover, the Report evidences that in regards to the payment history on the Loan, Equifax shows that the loan is "120 Days Late" for the months of March 2014 through July 2014 and for the months of September 2014 through February 2016, for a total of twenty-three (23) months. See *Exhibit 15*.

141.   The Report also evidences that in regards to the payment history on the Loan, Equifax shows that the loan is "90 Days Late" for August 2014, for a total of one (1) month. See *Exhibit 15*.

142.   Based upon the foregoing it is clear that Bayview continued to furnish adverse information to Equifax for at least twenty-four (24) payments that were explicitly subject to NOE #1 during the sixty (60) day time period following Bayview's receipt of NOE #1.

143.   Bayview's actions, in furnishing adverse information to Equifax as to at least twenty-four (24) payments that were explicitly subject to NOE #1 during the sixty (60) day time period following Bayview's receipt of NOE #1, constitutes a clear, distinct, and separate violation of 12 C.F.R. § 1024.35(i)(1) for each of the twenty-four (24) such payments for which Bayview furnished adverse information to Equifax.

144.   In total, Plaintiff alleges that Bayview has committed twenty-four (24) violations of 12 C.F.R. § 1024.35(i)(1) in furnishing adverse information to Equifax as to twenty-four (24) payments that were explicitly subject to NOE #1 during the sixty (60) day time period following Bayview's receipt of NOE #1.

145.   Bayview's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

146.   As a result of Bayview's actions, Bayview is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

## COUNTS THIRTY THROUGH FIFTY-THREE: VIOLATIONS OF 12 C.F.R. § 1024.35(i)(1)

### (Improperly furnishing adverse credit information to a consumer reporting agency regarding payments that are the subject of a notice of error)

147.   Plaintiff restates and incorporates herein all of their statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

148.   Plaintiff, by and through Attorney Krieger, sent NOE #1 to Bayview on or about February 7, 2016.  See *Exhibit 11.*

149.   Plaintiff, by and through Attorney Krieger, sent NOE #1 to Bayview on or about February 7, 2016.  See *Exhibit 11.*

150.   NOE #1 constituted a notice of error as such term is defined in 12 C.F.R. § 1024.35(a). See *Exhibit 11.*

151.   Plaintiff explicitly alleged numerous errors in Bayview's servicing of the Loan by and through the NOE. See *Exhibit 11.*

152.   Plaintiff alleged the following by and through the NOE that :

Bayview systematically misapplied funds to the Borrower's mortgage account[.]
[…]
As of the date of this notice, the Borrower was required to make a total of eighty-one (81) payments from June 1, 2009 through February 1, 2016.  The Borrower believes all required payments were in fact made, which prompted the initial RFI.
[…]
[T]he Borrower believes that all payments due to Bayview have been made, so Bayview is in error by claiming that the Borrower is past due for "09/01/15 [through] 01/01/16".   The Borrower also disputes the "Corporate Advance Balance" is $1,601.31 as stated in the NOD.

Further, $1,100 is not a "good faith estimate" of the actual fees Bayview may charge for a hypothetical trustee sale of the property (which is unlawful in any event based on the foregoing). Accordingly, the NOD contains numerous errors and was sent in error.

See *Exhibit 11.*

153.    Furthermore, Plaintiff explicitly stated that "[t]he Borrower is hereby placing Bayview on notice that the following payments are subject to this notice of error…each and every payment due under the mortgage loan herein from **May 12, 2009 through February 7, 2016.**" See *Exhibit 11* (emphasis in original).

154.    Also, at least twice within NOE #1, Plaintiff explicitly informed Bayview of the express prohibitions on reporting adverse information to credit reporting agencies contained in 12 C.F.R. § 1024.35(i)(1). See *Exhibit 11.*

155.    Bayview received NOE #1 on or about February 11, 2016. See *Exhibit 12.*

156.    On or about February 16, 2016, Bayview sent the Acknowledgment of NOE #1 to Plaintiff, by and through Attorney Krieger. See *Exhibit 13.*

157.    Experian sent the Report to Plaintiff on or about March 19, 2016. See *Exhibit 15.*

158.    The Report evidences that Transunion also shows that the Loan is past due in the amount of $3,509.00. See *Exhibit 15.*

159.    Moreover, the Report evidences that in regards to the payment history on the Loan, Transunion shows that the loan is "120 Days Late" for the months of March 2014 through July 2014 and for the months of September 2014 through

February 2016, with no data being reported for the month of December 2015, for a total of twenty-two (22) months. See *Exhibit 15*.

160.    The Report also evidences that in regards to the payment history on the Loan, TransUnion shows that the loan is "90 Days Late" for August 2014, for a total of one (1) month. See *Exhibit 15*.

161.    Based upon the foregoing it is clear that Bayview continued to furnish adverse information to TransUnion for at least twenty-three (23) payments that were explicitly subject to NOE #1 during the sixty (60) day time period following Bayview's receipt of NOE #1.

162.    Bayview's actions, in furnishing adverse information to TransUnion as to at least twenty-three (23) payments that were explicitly subject to NOE #1 during the sixty (60) day time period following Bayview's receipt of NOE #1, constitutes a clear, distinct, and separate violation of 12 C.F.R. § 1024.35(i)(1) for each of the twenty-four (24) such payments for which Bayview furnished adverse information to TransUnion.

163.    In total, Plaintiff alleges that Bayview has committed twenty-three (23) violations of 12 C.F.R. § 1024.35(i)(1) in furnishing adverse information to TransUnion as to twenty-four (24) payments that were explicitly subject to NOE #1 during the sixty (60) day time period following Bayview's receipt of NOE #1.

164.    Bayview's actions are believed to be a pattern and practice of behavior in conscious disregard for Plaintiff's rights.

165.   As a result of Bayview's actions, Bayview is liable to Plaintiff for actual damages, statutory damages, costs, and attorneys' fees.

**COUNT FIFTY-FOUR**
**VIOLATIONS OF THE FDCPA - 15 U.S.C. § 1692, et seq.**
**(against Defendant Bayview as a "Default Servicer")**

166.   The Plaintiff restates and incorporates herein all of the statements and allegations contained in the preceding paragraphs in their entirety, as if fully rewritten.

167.   Bayview's conduct violated 15 U.S.C. § 1692d in that Bayview engaged in behavior the natural consequence of which was to harass, oppress, or abuse the Plaintiff in connection with the collection of a debt.  Specifically, Bayview made numerous threats of foreclosure and attempted to collect impermissible fees, interest and other charges causing the Plaintiff to feel helpless, harassed, oppressed, and/or abused.

168.   Bayview's conduct violated 15 U.S.C. § 1692e in that Bayview engaged in false, deceptive or misleading behavior in connection with the collection of a debt. Specifically, among other things, Bayview misstated the correct balance due on Plaintiff's Loan, wrongfully claimed that the Plaintiff was in default on the Loan, and misrepresented that Bayview had the right to foreclose on the Property.  Specifically, Bayview failed to properly apply any and all payments made on the Loan.

169.   Bayview 's conduct violated 15 U.S.C. § 1692e(2) in that Bayview misrepresented the amount of the Debt owed by Plaintiff and attempted to have Plaintiff pay more than the Debt actually owed on the Loan.   These

misrepresentations were made via monthly billing statements from Bayview, inaccurate information furnished to credit reporting agencies and through other correspondence and communications whereby Bayview intended to collect the Debt.

170.   Bayview's conduct violated 15 U.S.C. § 1692e(5) in that Bayview threatened to take action against the Plaintiff which it could not legally take or did not intend to take in collection of a debt by wrongfully claiming that the Plaintiff was in default on the Loan and threatening foreclosure.

171.   Bayview's conduct violated 15 U.S.C. § 1692e(8) in that Bayview communicated false credit information to various credit reporting agencies, including the failure to communicate the Loan was disputed, in addition to all the above enumerated errors discussed, *supra*.

172.   Bayview's conduct violated 15 U.S.C. § 1692e(10) in that Bayview employed various false representations and deceptive means to collect a debt.

173.   Bayview's conduct violated 15 U.S.C. § 1692f in that Bayview's collection actions were unfair and/or unconscionable.

174.   Bayview's conduct violated 15 U.S.C. § 1692f(1) in that Bayview:

· attempted to collect an amount not authorized by the Loan; and/or

· charged an improper amount on the Loan.

175.   The foregoing acts and omissions of Defendant Bayview constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions, as well others as discovery may provide.

176.   The Plaintiff is entitled to damages as a result of Bayview's violations.

The Plaintiff has been required to retain the undersigned as counsel to protect their legal rights to prosecute this cause of action, and are therefore entitled to an award or reasonable attorneys' fees plus costs incurred.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter its order granting judgment for the following:

A.) For actual damages, costs, and reasonable attorneys' fees;

B.) For statutory damages in the amount of Two Thousand Dollars ($2,000.00) as to each and every count contained in Count One through Count Fifty-Three;

C.) For statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) as to Bayview;

D.) For punitive damages against all Defendants as permitted by law; and,

E.) Such other relief which this Court may deem appropriate.

Respectfully submitted,

/s/ David Krieger, Esq.
David Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Avenue, #130
Henderson, NV 89123
Telephone: (708)880-5554
dkrieger@hainesandkrieger.com
*Co-Counsel for Plaintiff Sakorn Sumedhatip*

/s/ Marc Dann, Esq.
Marc E. Dann, Esq. Ohio Bar 0039425
THE DANN LAW FIRM CO., L.P.A.
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216)373-0539
Facsimile: (216)-373-0536
notices@dannlaw.com
*Pro hac vice* (Application Pending)
*Co-Counsel for Plaintiff Sakorn Sumedhatip*

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ David Krieger, Esq.
David Krieger, Esq.
Nevada Bar No. 9086